**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **PAUL MARTINEZ-BEY,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:12-CV-4986-G-BH** |
| | ) | |
| **BANK OF AMERICA, NA, et al,** | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this *pro se in forma pauperis* action has been referred for pretrial management.  Based on the relevant filings and applicable law, Plaintiff's claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as well as his federal foreclosure claims, should be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2).  The Court should exercise supplemental jurisdiction over his state law claims, and these claims should also be dismissed with **DISMISSED** with prejudice under 28 U.S.C. § 1915(e)(2).

## I.  BACKGROUND

On December 5, 2012, Paul Martinez-Bey (Plaintiff) sued Bank of America, N.A. (BOA), as Servicing Agent for Well Fargo Bank, N.A. (WFB), as Trustee for the Certificate Holders of Banc of America Alternative Loan Trust 2001-11 Mortgage Pass-Through Certificates Series 2004-11, and the law firm of Butler & Hosch, P.A. (the law firm) (collectively, Defendants) based on the foreclosure of his home (the Property) and his subsequent attempted eviction.  (*See* Comp. (doc. 3).)  He appears to assert claims for violations of the Truth in Lending Act (TILA), the Fair Debt Collection Practices Act (FDCPA), wrongful foreclosure, wrongful eviction, trespass to try title, and violation of his due process rights under the Tex. Const. art. I, § 19.  (*See id.* at 2–7.)  He also expressly asserts claims for violations of his civil rights under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, the Protecting Tenants at Foreclosure Act (PTFA) and the Helping Families Save Their

Homes Act (HFSHA), as well as for misrepresentation and fraudulent concealment.  (*Id.* at 1–2;

Answers to First Magistrate Judge's Questionnaire (1st MJQ Ans.) (doc. 8), Ans. 6; Answers to

Second Magistrate Judge's Questionnaire (2d MJQ Ans.) (doc. 10), Ans. 5, 7.)[1]

## II.  PRELIMINARY SCREENING

Because Plaintiff has been granted permission to proceed *in forma pauperis* (*see* doc. 7), his

complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2).  That section provides

for *sua sponte* dismissal if the complaint is "frivolous or malicious", or if it "fails to state a claim

upon which relief may be granted."  A claim is frivolous if it "lacks an arguable basis either in law

or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law

when it is "based on an indisputably meritless legal theory" and an arguable basis in fact when it

describes "fantastic or delusional scenarios."  *Id.* at 327–28.  A complaint fails to state a claim upon

which relief may be granted when it fails to plead "enough facts to state a claim to relief that is

plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2]

## III.  CIVIL RIGHTS CLAIMS

Plaintiff asserts claims against Defendants for violations of his civil rights based on their

alleged involvement in the foreclosure of the Property as well as the subsequent forcible detainer

and eviction proceedings.  (docs. 3 at 7, 10; 10 at 6, 8.)

---

[1]   Plaintiff's answers to the court's questionnaires constitute amendments to the complaint.  *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

[2]   The analysis for determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is the same as the one employed under Fed. R. Civ. P. 12(b)(6).  *See Fierro v. Knight Transp.*, No. EP-12-CV-218-DCG, 2012 WL 4321304, at *7 (W.D. Tex. Sept. 18, 2011), slip copy, (citing *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam) (applying the same standard of review applicable to dismissals under Rule 12(b)(6) for screening dismissals under § 1915(e)(2)(B)(ii)); *Holt v. Imam*, No. C-07-406, 2008  WL 1782351, at *2 (S.D. Tex. Apr. 17, 2008), (citing *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (noting that § 1915A(b)(1), § 1915(e)(2)(B)(ii), and Rule 12(b)(6) all employ the same language—"failure to state a claim upon which relief may be granted").

### A.    Section 1981

Plaintiff sues under 42 U.S.C. § 1981 for Defendants' alleged violations of his "equal rights under" the PTFA and the HFSHA.  (*See* doc. 10 at 8.)

"Section 1981 generally forbids racial discrimination in the making and enforcement of private contracts."  *Bobo v. ITT, Continental Baking Co.*, 662 F.2d 340, 342 (5th Cir. 981), *cert. denied*, 456 U.S. 933 (1982) (citing *Runyon v. McCrary*, 427 U.S. 160, 168 (1976)); *see also* 42 U.S.C § 1981.  To establish a § 1981 claim, the plaintiff must prove "purposeful discrimination."  *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982).  Here, Plaintiff claims that he signed a "6 month contract" to purchase the Property on July 20, 2012.  He does not plead any facts to support a showing that Defendants discriminated against him in the enforcement of that contract on the basis of race, however.  (*See* doc. 10 at 2.)  Because Plaintiff fails to state a plausible claim under § 1981, this claim should be dismissed.

### B.    Section 1983

Plaintiff also sues and seeks monetary damages under 42 U.S.C. § 1983.  (*See* doc. 3 at 11.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms."  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Here, Plaintiff sues Defendants based on the foreclosure of the Property and his attempted

eviction.  (*See* doc. 3.)  As noted, he must allege that he has been deprived of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law to state a viable claim for relief in a § 1983 action.  *See American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999), *West v. Atkins*, 487 U.S. 42, 48 (1988).  "Under color of state law" excludes from its reach purely private conduct, no matter how discriminatory or wrongful.  *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982).  Private action may be deemed state action for purposes of § 1983 only where the challenged conduct "may be fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  Plaintiff has not alleged that Defendants are state actors or any facts to support a claim that their involvement in the foreclosure proceedings and forcible detainer suit may be attributable to the State.  He therefore fails to state a plausible claim under § 1983.

## C.   <u>Section 1985</u>

Plaintiff asserts a claim under 42 U.S.C. § 1985 for the violation of his "equal rights" under the PTFA and the HFSHA.  (*See* doc. 10 at 8.)

"Title 42 U.S.C. § 1985, part of the Civil Rights Act of 1871, creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section."  *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010).  The only form of alleged conspiracy that appears to be applicable in this case is a conspiracy to deprive any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the law. *See* 42 U.S.C. § 1985(3).  To state a claim under § 1985(3), Plaintiff must allege: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;

and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprives her of a right or privilege of a United States citizen. *See Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987).

It is well-established that a "corporation cannot conspire with itself any more than a private individual can" and that the "'acts of the agent are the acts of the corporation.'" *Hilliard*, 30 F.3d at 653 (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). If all of the alleged conspirators are members of the same corporation, a conspiracy under § 1985(3) does not involve two or more people. *See id.* Notably, like the relationship between a corporation and its members, "[t]he attorney-client relationship is one of principal and agent." *Dow Chem. Co. v. Benton*, 357 S.W.2d 565, 567 (Tex. 1962); *accord C.I.R. v. Banks*, 543 U.S. 426, 436 (2005) (citation omitted) ("The relationship between client and attorney … is a quintessential principal-agent relationship.")

Plaintiff appears to allege that Defendants conspired, either alone or together with WFB, to conceal the "proof of ownership" of the note and the title to the Property, with the purpose of depriving him of his "equal rights" under the PTFA and the HFSHA. (*See* docs. 3 at 12; 10 at 8.) Plaintiff sued BOA as the "servicing agent" for WFB, and by contending that the law firm is BOA's legal counsel, he essentially contends that it is BOA's agent. (*See* doc. 3 at 1, 3, 12.) Accordingly, he fails to plead any conspiracy to deprive him of his rights or privileges that was "a conspiracy of two or more persons." *See Hilliard*, 30 F.3d at 653; *Dow Chem. Co.*, 357 S.W.2d at 567. Additionally, the ownership of the note and the title to the Property do not constitute "rights" or "privileges" of a U.S. citizen. His claims under § 1985 should therefore be dismissed.

**D.**     **Section 1986**

Plaintiff also purports to bring a claim under 42 U.S.C. § 1986.  (*See* doc. 10 at 8.)

Section 1986 "extends liability in damages to those persons 'who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 ... are about to be committed, and having power to prevent or aid in preventing the commission of the same, (neglect or refuse) so to do ....'"  *Bradt v. Smith*, 634 F.2d 796, 801–02 (5th Cir. 1981) (citing 42 U.S.C. § 1986) (parenthesis in *Bradt*).  "This section on its face requires the existence of a valid claim under § 1985."  *Id.* (citation omitted).  As discussed, Plaintiff has failed to state a claim under § 1985. Accordingly, he has also failed to state a claim upon which relief may be granted under § 1986.

## IV.  FEDERAL FORECLOSURE CLAIMS

Plaintiff asserts claims for violations of the Protecting Tenants at Foreclosure Act (PTFA) and the Helping Families Save Their Homes Act (HFSHA).  (doc. 3 at 1–2, 9–12.)  He also appears to assert claims under the federal Fair Debt Collection Practices Act (FDCPA) and the Truth in Lending Act (TILA).  (*See id.* at 2–3, 9.)

**A.**     **PTFA**

Plaintiff alleges that Defendants violated the PTFA by failing to notify him of the pending foreclosure.  (docs. 3 at 1–2, 9–12; 10 at 8.)

The PTFA provides that "[i]n the case of any foreclosure on a federally-related mortgage loan," the "successor in interest" in the foreclosed property must give a "bona fide" tenant a 90-day notice before requiring him to vacate.  *See* Pub. L. No. 111-22, § 702(a)(1)–(2), 2009, 123 Stat. 1632, 1661.  Additionally, except when the successor in interest or a subsequent purchaser will occupy the property as his primary residence, if a "bona fide lease [was] entered into before the

notice of foreclosure," the lease is not terminated,[3] and the tenant may "occupy the [property] until the end of the ... lease." § 703(1), 123 Stat. at 1661. The PTFA defines "bona fide lease or tenancy," in relevant part, as one where "the tenant is not the mortgagor or the mortgagor's spouse, parent, or child." *See id.*

Plaintiff alleges that he was the "successor in tenancy to the property." (doc. 3 at 2.) He claims that he had resided on the Property for three years before Defendants instituted "an illegal eviction proceeding" and "caused [him] injury." (*See* docs. 3 at 2–3; 10 at 8.) According to his allegations, he was neither the foreclosing party or the purchaser at the foreclosure sale and was therefore not the "successor in interest" in the Property. In July 2012, he purportedly signed a "6 month contract", which was set to expire on January 31, 2013, to purchase the Property from PEF Capital; he had been "purchasing the Property under a contract" by the date of the foreclosure sale. (*See* docs. 3 at 2; 8 at 3; 10 at 2–3.) He complains that he was never notified of the pending foreclosure and was not given "an option to dispute the debt or work out a ... modification" as provided by Title IV § 401.[4] (doc. 3 at 2.) He wants to "be able to buy the [Property], as [he] [had] been doing" prior to the foreclosure and his attempted eviction. (doc. 10 at 2.) With these allegations, he effectively concedes that he was not a "bona fide" tenant under the PTFA because he agreed to purchase the Property before the foreclosure sale and was allegedly deprived of the opportunity to complete the purchase, or dispute or modify the debt on the Property. *See* § 702(b), 123 Stat. at 1661 ("the mortgagor" cannot be a bona fide tenant). Accordingly, his claim under the

---

[3] In that situation, the successor in interest or subsequent purchaser may terminate the lease on the day of the foreclosure sale but must still give the tenant a 90-day notice to vacate. *See* § 702(a)(2)(A), 123 Stat. at 1661.

[4] As explained in the following section, § 401 of the HFSHA provides foreclosure alternatives that mortgagees must pursue before foreclosing on mortgaged property. *See* Pub. L. 111-22, § 401, 123 Stat. at 1655–56.

PTFA fails.

B.    **HFSHA**

Plaintiff contends that Defendants "commenc[ed] an illegal eviction/forcible detainer proceeding" in violation of the HFSHA, § 401.  (doc. 3 at 2, 9.)

The HFSHA provides that mortgagees and mortgage servicers "should not foreclose on mortgaged property ... until the foreclosure mitigation provisions, like the Hope for Homeowners program … and the … Homeowner Affordability and Stability Plan have been implemented and determined to be operational by the Secretary of Housing and Urban Development [HUD] and the Secretary of the Treasury."  Pub. L. 111-22, § 401, 123 Stat. at 1655–56.  Although the Home Affordable Modification Program (HAMP) and the Hope for Homeowners Program were enacted in part to help homeowners avoid foreclosure,[5] courts have held that these programs do not create a private cause of action for borrowers against lenders and mortgage servicers.  *See Bey v. PEF Capital Properties, LLC*, No. 3:12-CV-2371-L BH, 2013 WL 1743890, at *3 (N.D. Tex. Apr. 23, 2013) (noting that the court was "unable to locate any authority that has concluded that [the HFSHA] provides a private cause of action or remedies to enforce [the] Act"); *Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF, 2013 WL 246860, at *3 (N.D. Tex. Jan. 21, 2013) (holding that "there is no private right of action for borrowers for failure to receive a HAMP modification") (collecting cases); *Wallace*, 2010 WL 2574058, at *3 ("Congress did not create a private right of

---

[5] HAMP, codified in 12 U.S.C. §§ 5219 and 5219a, was established by the U.S. Department of the Treasury under the Emergency Economic Stabilization Act of 2008 (EESA) as part of its "efforts to stabilize the country's housing and financial system."  *Strange v. Flagstar Bank, FSB*, No. 3:11-CV-2642-B, 2012 WL 987584, at *2 (N.D. Tex. Mar. 22, 2012) (citing 12 U.S.C. § 5201). Section 109 of EESA, 12 U.S.C. § 5209, authorizes the Secretary, "upon acquiring mortgages and other assets secured by residential real estate, to implement a plan to maximize assistance to homeowners and to encourage mortgage servicers 'to take advantage of the HOPE for Homeowners Program … or other available programs to minimize foreclosures.'"  *Wallace v. Bank of Am.*, No. 10-CV-017-JL, 2010 WL 2574058, at *3 (D.N.H. June 17, 2010), *recommendation adopted*, 2010 WL 3219355 (D.N.H. Aug. 10, 2010).

action for individuals to sue banks under … the HOPE for Homeowners Act.").

Plaintiff claims that he did not "have [the] option" to modify his mortgage and that Defendants "willfully, knowingly, [and] with [the] intention to cause [him] emotional distress," foreclosed on the Property without implementing the "foreclosure mitigation" programs referenced in § 401 of the HFSHA.  (doc. 3 at 2, 9.)  His claim under the HFSHA fails and should be dismissed because there is no private right of action under these programs.

## C.    FDCPA

Plaintiff's complaint invokes § 1692 of the FDCPA.  (*See* doc. 3 at 3.)

The FDCPA prohibits a "debt collector" from: 1) using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt' as well as 2) using 'unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C.A. §§ 1692e and1692f (West 2010).  Debt collectors are also required to provide a proper validation notice of the consumer's rights and to refrain from engaging in collection activities or communications which "overshadow" or are "inconsistent with the disclosure of the consumer's right to dispute the debt" within the 30 days allowed for disputing the debt.  *Id.* § 1692g(a) and (b).  Under the Act, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6).  There are two categories of debt collectors: those who collect debts as the "principal purpose" of their business, and those who collect debts "regularly."  *Garcia v. Jenkins/Babb LLP,* No. 3:11-CV-3171-N-BH, 2012 WL 3847362, at *6 (N.D. Tex. July 31, 2012), *recommendation adopted,* 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012) (citing *Hester v. Graham, Bright & Smith,*

*P.C.*, 289 F. App'x 35, 41 (5th Cir. 2008)).  "A person may 'regularly' collect debts even if debt collection is not the principal purpose of his business."  *Id.*  "Whether a party 'regularly' attempts to collect debts is determined, of course, by the volume or frequency of its debt collection activities."  *Id.* (citing *Brown v. Morris*, 243 F. App'x 31, 35 (5th Cir. 2007) (per curiam)).

Plaintiff claims that Defendants violated the FDCPA, "15 U.S.C. § 1692 *et seq.*", "by institu[ting] … an illegal eviction proceeding … without ever proving" their authority to collect on his debt.  (*See* doc. 3 at 3.)  He fails to allege that Defendants were either engaged "in any business the principal purpose of which [was] the collection of any debts" or that they "regularly collected or attempted to collect ... debts."  *See* 15 U.S.C. § 1692a(6).  Without more, any claim for violations of the FDCPA fails under the applicable pleading standards and is subject to dismissal.

## D.   **TILA**

Plaintiff's complaint may also be liberally construed as asserting a claim under §1641(g) of TILA, for failure to provide notice of his mortgage transfer.  (*See* doc. 3 at 2, 9.)

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers."  *Schieroni v. Deutsche Bank Nat. Trust Co.*, No. CIV.A. H-10-663, 2011 WL 3652194, at *3 (S.D. Tex. Aug. 18, 2011) (citations omitted). Section 1641(g) was added to TILA by the "Act to Prevent Mortgage Foreclosures and Enhance Mortgage Credit Availability of 2009," Pub. L. 111-22, § 404(a), 123 Stat. at 1658. Section 1641(g) provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer" and provide the borrower with certain disclosures. 15 U.S.C.A. § 1641(g)(1) (West 2011).  It grants the borrower "a private right of action

for civil liability against any creditor that fails" to comply with this requirement. *Jameel v. Flagstar Bank, FSB*, No. CIV.A. H-12-1510, 2012 WL 5384177, at *7 (S.D. Tex. Nov. 2, 2012).  The borrower may recover "actual damage[s] sustained ... as a result of the failure" and statutory damages, which may be up to "twice the amount of any finance charge in connection with the transaction." 15 U.S.C.A. § 1640(a)(1)–(2).

Here, Plaintiff argues that he "was never notified" of the pending foreclosure in violation of Title IV § 401.[6]  (doc. 3 at 2.)  He alleges that there was "confusion" about the identity of the Property's "rightful owner", and that at first, WFB "was shown [to be] the owner." (*Id.* at 10-11.) In the forcible detainer suit "PEF Capital Properties" (PEF) was allegedly "listed as the owner[] of record." (*Id.* at 10–11.)  By the time Plaintiff filed suit, BOA claimed ownership of the Property. (*Id.*)  Plaintiff disputes BOA's claim to the Property and its authority to collect on his mortgage, alleging that it was not properly assigned the note.  (*See id.* at 3, 11.)  Because he essentially argues that BOA was not the "new creditor" or "assignee" of his mortgage, his allegations fail to state a claim under § 1641(g).  *See Jameel*, 2012 WL 5384177, at *8 (explaining that to state a claim under § 1641(g), the plaintiff must "allege[] facts showing that [the defendant] [was] the new owner or assignee and that it failed to meet the notification requirement [of] § 1641(g)").  Accordingly, any claim under § 1641(g) of TILA also fails and should be dismissed.

## V.  STATE FORECLOSURE CLAIMS

Plaintiff asserts a claim for misrepresentation and fraudulent concealment, contending that BOA was not the "holder in due course" of the note because it did not acquire it through a valid assignment.  (doc. 3 at 3–5.)  His complaint could also be liberally construed as asserting claims for

---

[6]  Plaintiff may be referring to § 404(a), which enacted the notice requirement of TILA, § 1641(g).

wrongful foreclosure, wrongful eviction, trespass to try title, and the violation of his due process rights under the Texas Constitution.  (*See* docs. 3 at 1–8, 12; 8 at 6.)

## A.      Supplemental Jurisdiction

Pursuant to § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). In essence, § 1367(a) grants courts the "power to hear a state law claim ... if (1) the federal issues are substantial, even if subsequently decided [to be] adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact."  *McKee v. Texas Star Salon, LLC*, No. CIV.A.3:06-CV-879BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007).

When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims.  *Nagy v. George*, No. 3:07-CV-368-K, 2007 WL 2122175, at *10 (N.D. Tex. July 23, 2007), *aff'd*, 286 F. App'x 135 (5th Cir. 2008); *see also* 28 U.S.C. § 1367(c)(3);[7] *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986).  Nonetheless, this rule is "neither mandatory nor absolute."  *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted).  Rather, district courts are given "wide discretion" in deciding whether to exercise jurisdiction under such circumstances. *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiff's right").  In

---

[7]   Section 1367(c) allows district courts to decline to exercise supplemental jurisdiction over a state claim if:
(1) the claim raises a novel or complex issue of state law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367(c).

exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257; *Nagy*, 2007 WL 2122175, at *10.

Here, all three factors weigh in favor of retaining jurisdiction over Plaintiff's state foreclosure claims. First, Plaintiff's state claims arise from the same "common nucleus of operative facts" as his federal claims, namely, Defendants' alleged foreclosure of the Property. Requiring him to litigate these claims in state court would "necessarily require consideration by two distinct courts of the same operative fact" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Moreover, because this is the second lawsuit that Plaintiff has filed in relation to the foreclosure, the Court has spent a substantial amount of time and resources reviewing the pleadings and researching the legal issues involved, and has become familiar with the merits of his claims. *See McCall v. Peters*, No. CIV.A. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 12, 2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendent jurisdiction, the court may consider factors such as the amount of time and resources that it has spent adjudicating the case); *see also Bey*, 2013 WL 1743890, at *1 (*sua sponte* dismissing the "action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of standing"). Lastly, this case involves a *pro se* litigant with limited resources who has filed motions for, and has been granted, leave to proceed *in forma pauperis*. In conclusion, the Court should exercise supplemental jurisdiction over Plaintiff's state foreclosure claims and review them on the merits. *See McCall* 2003 WL 21488211, at *12.

## B.    "Show-me-the-note" Theory

Plaintiff essentially contends that BOA did not become "the holder in due course" of the note through a valid assignment. (doc. 3 at 3.) He also argues that the note and deed of trust were

separated and due to the purported bifurcation, the note became "unsecured", the deed of trust became unenforceable, and it became "impossible" for BOA to foreclose since it could not "present" the note as required by the Texas Uniform Commercial Code (UCC). (*Id.* at 4–6.) Because no assignment of his mortgage was ever recorded, the chain of title to the Property became "defective" and BOA lost its "right to receive a distribution from the sale of the Property." (*Id.* at 6–8.)

Plaintiff's allegations that BOA was required to "present" the note to prove it could collect on it and foreclose on the Property implicates the "show-me-the-note" theory. *See Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *recommendation adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012). "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (citation and internal quotation marks omitted). The theory has been repeatedly rejected in this circuit as having no merit. *Bennett*, 2012 WL 2864751, at *3; *see also Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (collecting cases).[8]

"Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Martins v. BAC Home Loans Servicing, L.P.*, No. 12-20559, 2013 WL 1777487, at *2 (5th Cir. Apr. 26, 2013) (quoting *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at

---

[8] Plaintiff's contentions that BOA could not foreclose on the Property because the note became "unsecured" after it was allegedly split from the deed of trust implicates the "split the note" or "bifurcation" theory. *See Islamic Ass'n of DeSoto, Texas, Inc. v. Mortgage Elec. Registration Sys., Inc.*, No. 3:12-CV-0613-D, 2012 WL 2196040, at *3 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.) (explaining that the plaintiff's "split the note" theory was based on its argument that because "MERS never held the Note ... its assignment of the Deed of Trust  ... ha[d] no force or effect"); *see also Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.) ( "[The] bifurcation theory originates in the concept that a note has no separate existence from its security, and an assignment of the security alone is a nullity.") This theory appears to be a variation of the "show-me-the-note" theory, as it claims that possession of the note is a prerequisite to foreclosure.

*3 (W.D. Tex. July 25, 2011)).  Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property." *Bierwirth*, 2012 WL 3793190, at *3.  When the lender seeks a personal judgment against the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument." *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012).  By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note."  *Reardean*, 2011 WL 3268307, at *3; *accord Martins*, 2013 WL 1777487, at *2 ("[F]oreclosure ... enforces a deed of trust, rather than the underlying note, and can be accomplished without judicial supervision.").

Courts have held that "[t]he Texas Property Code provides that either a mortgagee or mortgage servicer may administer a deed of trust foreclosure without production of the original note." *Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1, n. 1 (5th Cir. Mar. 28, 2011) (per curiam) (citing to Tex. Prop. Code §§ 51.0002, 51.0025); *Bennett*, 2012 WL 2864751, at *3.  The Code defines mortgagee as "the grantee, beneficiary, owner, or holder of a security instrument," or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code Ann. § 51.0001(4)(A),(C) (West 2007).  A "mortgage servicer" is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument."  *Id.* § 51.0001(3).  A mortgagee may be its own mortgage servicer.  *Id.*

Accordingly, for an entity who is not the original lender to become the mortgagee and thereby acquire the right to foreclose on the mortgaged property, ownership or possession of the note

is irrelevant, "[a]ll that matters ... is that the mortgage [i.e the deed of trust] be properly assigned" to it. *Martins*, 2013 WL 1777487, at *2. A mortgage servicer may also foreclose on behalf of the mortgagee if the parties enter into an agreement and provide the mortgagor with certain disclosures. *See* Tex. Prop. Code Ann. § 51.0025. As courts have noted, however, § 51.0025 does "not require the mortgage servicer to be the 'holder' of the Note [or] Deed of Trust or to produce the original loan documents." *Sawyer v. Mortgage Elec. Registration Sys., Inc.*, No. 3-09-CV2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010), *recommendation adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010); *see also Darocy v. Chase Home Fin., LLC*, No. 3:10-CV-1259-L, 2012 WL 840909, at *10 (N.D. Tex. Mar. 9, 2012).

Plaintiff's allegation that BOA could not foreclose on the Property because it was not the holder in due course of the note could not support any claim against Defendants as a matter of law. *See Martins*, 2013 WL 1777487, at *2; *Islamic Ass'n*, 2012 WL 2196040, at *2. To the extent that he bases his claims for fraud and wrongful eviction, or any other claim, on these allegations, the claims are subject to dismissal for failure to state a claim.[9] *See Bennett*, 2012 WL 2864751, at *3.

## C.    **Misrepresentation and Fraudulent Concealment**

Plaintiff alleges that Defendants engaged in fraud, "theft by deception", misrepresentation, and concealment by withholding from him "critical" information relating to the "ownership" of the Property. (doc. 3 at 1, 12.)

### 1.    *Rule 9(b) Standard*

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the

---

[9] Plaintiff's allegations that a "defective chain of title" was created and that BOA forefeited its right to the foreclosure proceeds because the assignment of his mortgage was not recorded are without merit. Courts have consistently held that "recordation is not necessary for liens, deeds, or deeds of trust to be enforceable against the parties to those instruments." *Bennett*, 2012 WL 2864751, at *4 (citations omitted).

same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).  Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010).  "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (citation omitted).

### 2. *Misrepresentation*

In Texas, the elements of fraud by misrepresentation are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010)).

Plaintiff argues, in essence, that Defendants misrepresented BOA's authority to foreclose on the Property by falsely representing that it was the holder in due course of the note and had title to the Property.  (*See* doc. 3 at 12.)  Although he lays out the "what", he does not state the "when,

where, or how" of his claim.  *See Benchmark Elecs.*, 343 F.3d at 724.  As noted, pleading fraud with

particularity requires a plaintiff to specify not only the statements contended to be fraudulent as well

as their speaker, but also explain "when and where the statements were made, and ... why the

statements were fraudulent."  *See Williams*, 112 F.3d at 177.  Plaintiff's claim for misrepresentation

is subject to dismissal for failure to meet the heightened pleading requirements of Rule 9(b).

### 3.      *Fraudulent Concealment*

"A cause of action for fraud may be based on a defendant's failure to disclose information

if there is a duty on the defendant to do so."  *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619,

630 (S.D. Tex. 2010) (citing *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001)).   A duty to

disclose may arise when: (1) the parties have a confidential or fiduciary relationship; (2) the

defendant voluntarily makes a representation, which gives rise to the duty to disclose the whole

truth; (3) the defendant makes a representation, which gives rise to the duty to disclose new

information (of which he later becomes aware) that makes the earlier representation misleading or

untrue; or (4) the defendant makes a partial disclosure and conveys a false impression, which gives

rise to the duty to correct the false impression.  *Id.* (citing *Four Bros. Boat Works, Inc. v. Tesoro

Petroleum Cos., Inc.*, 217 S.W.3d 653, 670–71 (Tex. App.—Houston [14th Dist.] 2006, pet.

denied)).  Because Plaintiff alleges no facts showing that Defendants had a duty to disclose any

information to him and that they breached such a duty, his claim for fraudulent concealment is

subject to dismissal for failure to state a claim upon which relief may be granted.

### D.      **Wrongful Foreclosure**

Plaintiff's contentions that he was "never notified of [the] pending foreclosure" and did not

have the "option" to dispute his debt may be liberally construed as asserting a wrongful foreclosure

claim for failure to send the requisite notices under §§ 51.002(b) and (d) of the Texas Property Code. (*See* doc. 3 at 2.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings. *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)). In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011). The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A procedural defect may occur when the foreclosing party either "fails to comply with statutoryor contractual terms,"[10] or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Matthews*, 2011 WL 3347920, at *2. Nevertheless, recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*,

---

[10]    To conduct a lawful foreclosure in Texas, a mortgagee or mortgage servicer "must strictly satisfy the notice requirements set forth in the deed of trust and prescribed by law." *Gossett v. Fed. Home Loan Mortg. Corp.*, No. CIV.A. H-11-508, 2013 WL 321664, at *5 (S.D. Tex. Jan. 24, 2013) (citing *Univ. Savings Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982)). "Texas law requires two primary notices in the foreclosure context: a notice of default, and a notice of sale." *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *4 (N.D. Tex. July 12, 2012). The mortgagee or mortgage servicer must provide to the debtor written notice of default and intent to accelerate, and must give the debtor an opportunity to cure the default within a minimum of 20 days. *See* Tex. Prop. Code § 51.002(d). If the lender invokes the power of sale under the deed of trust, it must provide to the debtor notice of the time and place of the foreclosure sale at least 21 days prior to the date of the sale by posting notice in the county where the property is located, filing the notice with the office of the county clerk, and "serving written notice of the sale by certified mail on each debtor." *See id.* § 51.002(b).

767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.); *accord Martins*, 2013 WL 1777487, at *3.

Plaintiff alleges that the Property was foreclosed upon in December 2011 and that Defendants filed for his eviction on December 6, 2012.  (docs. 3 at 4, 7; 8 at 3.)  He contends that he was never notified of the "pending foreclosure" and was not given the opportunity to dispute his debt or "work out" a payment plan.  (*See* doc. 3 at 2.)  These allegations could not plausibly entitle him to relief because he does not allege any facts showing that the Property was sold for a grossly inadequate price.  He also fails to allege a causal connection between any failure by part of Defendants to provide him with the foreclosure notice and opportunity to cure and any grossly inadequate selling price.  Accordingly, any wrongful foreclosure claim fails and should be dismissed.  *See Byrd v. Chase Home Fin. LLC*, No. 4:11-CV-022-A, 2011 WL 5220421, at *4 (N.D. Tex. Oct. 31, 2011) (dismissing wrongful foreclosure claim where the plaintiffs alleged they did not receive the requisite notices under Tex. Prop. Code § 51.002(b), but they failed to allege any facts establishing a grossly inadequate selling price resulting from this procedural defect); *see also Pollett v. Aurora Loan Services*, 455 F. App'x 413, 415 (5th Cir. 2011) (per curiam) (affirming dismissal of wrongful foreclosure claim where the plaintiff "failed to allege ... a grossly inadequate selling price and a causal connection between a defect in the foreclosure sale proceedings and the grossly inadequate selling price.")[11]

---

[11]  Although the Justice Court purportedly held for Defendants in the eviction suit, Plaintiff appealed that judgment and remained in possession of the Property as of the date he filed the present action.  (*See* docs. 8 at 4; 10 at 3.)  Any wrongful foreclosure claim fails for this additional reason.  *See Everhart v. CitiMortgage, Inc.*, No. CIV.A. H-12-1338, 2013 WL 264436, at *7 (S.D. Tex. Jan. 22, 2013) (dismissing wrongful foreclosure claim where the plaintiff remained in possession of the property; explaining that "recovery under a wrongful foreclosure claim is based on the mortgagor's [lost] possession") (citing *Petersen v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.)).

**E.**     **Wrongful Eviction**

Plaintiff's allegation that Defendants "instituted ... an illegal eviction" may be liberally construed as asserting a claim for wrongful eviction.  (*See* docs. 3 at 3, 10; 10 at 2.)

"Texas cases recognizing a claim for wrongful eviction generally involve an eviction of a tenant by a landlord." *Ezennia v. Wells Fargo Bank, N.A.,* No. CIV.A. H–10–5004, 2012 WL 1556170, at *8 (S.D. Tex. Apr. 27, 2012). To prevail in this cause of action, a plaintiff must prove: (1) the existence of an unexpired lease contract; (2) occupancy of the property in question by the plaintiff; (3) eviction or dispossession by the landlord; and (4) damages attributable to the eviction. *Id.* (citing *McKenzie v. Carte*, 385 S.W.2d 520, 528 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd, n.r.e.)).

Plaintiff alleges that by the time Defendants filed the forcible detainer suit, he had "been domiciling [at] [the Property] for approximately 3 years." (doc. 10 at 8.)  He argues that the forcible detainer suit was "illegal" because BOA was not the holder in due course of the note and therefore lacked authority to collect on it and foreclose on the Property.  (*See* docs. 3 at 3; 10 at 2.)  Moreover, the law firm "willfully" neglected to implement the mitigation provisions of the HFSHA and "caused [him] injury" by filing the forcible detainer suit.  (doc. 3 at 3.)  As discussed, Plaintiff's contention that BOA was required to produce the note is legally invalid.  *See Martins*, 2013 WL 1777487, at *2.  While he alleges that he occupies and is being evicted from the Property, the contract that he purportedly signed in July 2012 was a purchase contract and not a lease, and he fails to specify any damages attributable to the attempted eviction.  (*See* docs. 8 at 3; 10 at 2.)  This claim should therefore be dismissed.  *See Byrd*, 2011 WL 5220421, at *4 (dismissing wrongful eviction claim that was factually unsupported).

**F.**     **Trespass to Try Title**

Plaintiff makes allegations that place the title to the Property in dispute and may be liberally construed as asserting a trespass to try title claim.  (*See* docs. 3 at 11; 10 at 2.)

"An action in trespass to try title is the method of determining title to lands, tenements, or other real property."  Tex. Prop. Code Ann. § 22.001 (West 2000).  This action "is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession."  *Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex. App.—Corpus Christi 1978, no writ.) (citations omitted).  To prevail, a plaintiff must either: "(1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned."  *Hurd*, 880 F. Supp. 2d at 767 (citing *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)).  The plaintiff "must recover upon the strength of his own title and not the weakness of the defendant's title."  *Rocha*, 574 S.W.2d at 236 (citing to *Hejl v. Wirth*, 343 S.W.2d 226 (Tex. 1961) and *Kauffman v. Shellworth*, 64 Tex. 179 (1885)).

Plaintiff wants to "buy" the Property as he had "been doing" prior to the foreclosure and asserts there is "confusion" about its "rightful" owner because WFB, BOA, and PEF all claim to have an interest in it.  (*See* docs. 3 at 11; 10 at 2.)  He does not allege, and otherwise fails to show, that he has superior title to the Property vis-à-vis BOA; and he contends that he was deprived from finalizing his purchase of the Property.  (See doc. 10 at 2.)  He also fails to allege any facts raising a reasonable inference that any claim to the Property by part of BOA is invalid or unenforceable.  Accordingly, to the extent that he asserts a trespass to try title claim, the claim fails and is subject to dismissal.

G.     **Violation of Plaintiff's Due Process Rights under the Texas Constitution**

Plaintiff's complaint may be liberally construed as asserting a claim for the taking of his property without due process in violation of the Texas Constitution, article I, § 19.  (*See* doc. 3 at 7.)

In Texas, "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."  Tex. Const. art. I, § 19.  "Texas Courts have held that the 'due course of law' clause of section 19 provides no private cause of action for damages."  *RBIII, L.P. v. City of San Antonio*, No. SA-09-CV-119-XR, 2010 WL 3516180, at *7 (W.D. Tex. Sept. 3, 2010) (citations omitted).  Moreover, "[l]ike the 'under color of state law' requirement in section 1983 claims, to prevail on a theory of unconstitutional taking under the Texas Constitution, [the plaintiff] must show that [the defendant] was acting 'with [state] authority or color of [state] authority.'"  *Aspenwood Apartment Corp. v. Link*, No. 01-05-00555-CV, 2007 WL 2832985, at *4 (Tex. App.—Houston [1st Dist.] Sept. 27, 2007, pet. denied) (citing *Steele v. City of Houston,* 603 S.W.2d 786, 791–92 (Tex. 1980)).

While Plaintiff cites to the Tex. Const. art. I, § 19 in passing, he does not make specific factual allegations in connection with this provision.  (*See* doc. 3 at 7.)  He seeks $450,000.00 in "restitution" and "punitive" damages for the violation of his civil rights under the Fourth and Fifth Amendments of the U.S. Constitution and for "all [the] other violations mentioned" in his complaint.  (*See id.* at 11.)  Any claim that Defendants violated his due process rights under the Texas Constitution by foreclosing on the Property or filing for his eviction could not entitle him to monetary damages.  *See RBIII, L.P.*, 2010 WL 3516180, at *7.  Further, as discussed with respect to his federal § 1983 claim, he pleads no facts showing that the foreclosure of the Property or his

-23-

subsequent attempted eviction may be attributable to the State.  Accordingly, any claim under the

Tex. Const. art. I, § 19 for violation of his due process rights fails and should be dismissed.

## VI.  RECOMMENDATION

Plaintiff's claims against Defendants[12] under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, as

well as his federal foreclosure claims, should be **DISMISSED** with prejudice pursuant to  28 U.S.C.

§ 1915(e)(2).  The Court should exercise supplemental jurisdiction over his state foreclosure claims,

as well as his claim under the Tex. Const. art. I, § 19, and these claims should also be dismissed with

**DISMISSED** with prejudice under 28 U.S.C. § 1915(e)(2).[13]

**SO RECOMMENDED** this 22nd day of May, 2013.



IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[12]   Other than his TILA claims, Plaintiff's federal claims appear to implicate both Defendants because they arise from or relate to his attempted eviction, which he contends the law firm initiated on behalf of BOA.  (*See* docs. 3; 8; 10.) Regardless of which claims he asserts against the law firm, Plaintiff fails to allege sufficient facts to state a plausible claim for relief against it.  Accordingly, the Court should dismiss this action against both Defendants.

[13] Notwithstanding their failure to plead sufficient facts, courts in this Circuit typically allow *pro se* plaintiffs the opportunity to amend their complaints in response to a recommended dismissal or when the action is to be dismissed pursuant to a court order.  *See Swanson v. Aegis Commc'ns Group, Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Nos. 3:96-CV-2923-D, 3:97-CV-0353-D, 2004 WL 789870, at *2 (N.D. Tex. Apr.12, 2004).  Nevertheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his best case.  *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).  Plaintiff has filed two separate actions asserting the same claims against various defendants in relation to the foreclosure. (*See* docs. 3; 8; 10); *see also Bey*, 2013 WL 1743890, at *1 (finding that Plaintiff asserted "claims under 15 U.S.C. § 1692 ... , [and for] wrongful or fraudulent foreclosure and eviction, fraudulent concealment or misrepresentations ... , violations of the [HFSHA], … the [PTFA], unspecified ... violations of civil rights and equal protection rights under 42 U.S.C. § 1983, and ... violations of the Fifth and Fourteenth Amendments ... [under] 42 U.S.C. § 1983.").  Plaintiff was unable to obtain relief in his previous suit.  *See id.*  In this case, he was sent two different magistrate judge's questionnaires in an attempt to obtain more information about his claims.  (*See* docs. 7-10.)  Because it appears that he has pled his best case, no opportunity to amend is warranted as to any of his claims, and dismissal with prejudice is therefore appropriate.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  See Douglass v. United Servs. Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE